## BURR v. KOSTER.

(Supreme Court, Appellate Division, First Department. April 7, 1911.)

1. FACTORS (§ 42*)—ACTIONS—SUFFICIENCY OF EVIDENCE.

In an action to recover plaintiff's share of the profits on sales of butter shipped to defendant, and which share plaintiff claimed defendant had converted to his own use, evidence *held* to show that defendant received the proceeds of the sales in a fiduciary capacity, and that there was no sale of the butter by plaintiff to defendant.

[Ed. Note.—For other cases, see Factors, Cent. Dig. § 53; Dec. Dig. § 42.*]

2. EVIDENCE (§ 129*)—EXPLANATORY TRANSACTIONS—ADMISSIBILITY.

Where there was an issue as to the terms on which defendant received butter from plaintiff for sale, evidence as to an agreement between defendant and one W. whose business plaintiff purchased, regarding the conditions of the business, was competent; it having been expressly agreed that defendant would continue to receive butter from plaintiff on the same terms that he had been receiving it from W.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 391; Dec. Dig. § 129.*]

Laughlin, J., dissenting in part.

Appeal from Special Term, New York County.

Action by Isaac Burr against Henry Koster. From a judgment for defendant, and from orders denying his motion for a new trial, plaintiff appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Ralph Royall, for appellant.

Frederick M. Harris, for respondent.

LAUGHLIN, J. The plaintiff was engaged in the produce business at Berkshire, Tioga county, N. Y., and brought this action to recover the sum of $3,928.70 of the defendant, on the theory that defendant received five consignments of butter from him for sale and received said amount on the sale thereof over and above his commissions, and the freight charges paid by him thereon, and converted the same to his own use. The answer interposed was a general denial.

On the trial plaintiff gave evidence tending to sustain the allegations of the complaint, and the action was defended on the theory that the defendant purchased the butter of the plaintiff, and was given credit therefor. At the close of the evidence, one of the attorneys for the plaintiff moved for a direction of a verdict on the ground that the only question in the case was whether the transactions constituted an agency, a sale, or a partnership, and that, as he viewed the evidence, there was no dispute concerning "the material elements of the relations of these parties." The motion was denied and appellant excepted.

The court instructed the jury that the theory of plaintiff was that the butter was consigned to the defendant as a commission merchant for sale, and charged that, if it was so consigned, the defendant in

selling it acted in a fiduciary capacity, and was liable for conversion for a failure to transmit or account for the proceeds of the sales, less commissions and the amount paid for freight or express charges thereon; and further instructed the jury that the claim of the defendant was that, if on receipt of the butter he found it satisfactory, it became his property, and that he became liable to the plaintiff, as a purchaser, for the price received, less one-half of the profits on the sale, after deducting the cost of the butter and the freight or express charges thereon. The court further charged the jury that in the one case, namely, if the butter were received for sale on consignment, there was a fiduciary relationship between plaintiff and the defendant, and the latter was liable to arrest; but that, if they found that the transaction was as claimed by defendant, he was not a fiduciary, and therefore not liable to arrest, and the plaintiff was not entitled to recover in this action, but would be entitled to recover the amount due him in another form of action; and the court specifically instructed the jury that they were to determine merely the question as to whether the defendant acted as agent, or trustee, or in a fiduciary capacity, for the plaintiff, and, if they found that a fiduciary relationship did not exist, then the defendant was entitled to a verdict, but, if such relationship did exist, the plaintiff was entitled to recover. Counsel for the plaintiff at the close of the charge requested the court to instruct the jury that:

If "defendant acted as what is commonly called a commission merchant, that that is an agency in the sense of the agency alleged in the complaint, and which the plaintiff has to prove."

This request was declined, and no exception was taken thereto. One of the attorneys for the plaintiff then requested the court to instruct the jury that, if the defendant was to remit after deducting commissions, that established an agency, and plaintiff was entitled to a verdict. This request was also declined, and appellant excepted. The court at the request of the attorney for the defendant instructed the jury that if the relationship of the parties constituted a mere agreement for a division of the profits, and there was no agency or trusteeship or fiduciary capacity existing between them, the defendant was entitled to a verdict; and that, if they were copartners or it was a joint venture, the defendant was entitled to a verdict. The court also instructed the jury at the request of one of the attorneys for the plaintiff that, even though they found that the agreement was one for a division of the profits, they might find that it was a fiduciary relationship, and that the division of the profits was a circumstance to be considered in determining whether or not there was a fiduciary relation.

According to the testimony of the plaintiff, his action was based on five consignments of butter on which he received from the defendant accounts of sales under dates of January 7, February 5, March 4, April 5 and 7, 1909, which showed a balance due to him from the defendant of the amount for which the action is brought less the sum of $137; and he showed by other evidence that the books of the defendant showed that the butter was sold for $274,

more than the amount reported in these statements. The agreement of the parties was according to the testimony of the plaintiff in effect that defendant was to receive for his commissions one-half the profits on the sales, and on that theory the plaintiff would be entitled to $137 more than the amount showed to be owing to him by the statements made by the defendant. The plaintiff testified with respect to the agreement between himself and the defendant that in or about the month of May, 1900, he bought out the business of one Waldo, at Berkshire, who had theretofore had business relations with the defendant, and shipped butter to the defendant on the same day without negotiating any contract with him, that shortly thereafter he was accompanied to New York by Waldo and by him introduced to defendant, and that Waldo stated to defendant that plaintiff wished to continue the business with defendant which had theretofore been carried on by Waldo and on the same basis, but the only statement with respect to what that basis was, was that it was "a joint account"—that is, that they were to share equally in the profits after deducting the cost of the butter and the transportation charges—that he did not expect that defendant would remit the money he received from his customers but expected that he would pay within a reasonable time; that he expected the defendant would guarantee the sales, and would bear any losses of collections on the sales; that he expected to bear one-half of any loss in case of sales for less than the cost of the butter and the transportation charges, that defendant rendered an account on this basis for all the butter shipped to him by the plaintiff, and never made any claim against the plaintiff on account of any loss on collections, and never reported a sale at a loss; that there was no express agreement concerning credit, but the course of business between the parties had been for plaintiff to draw a draft on defendant for three or four months with respect to each account of sales, to enable the defendant to collect on the sales, which draft defendant would accept; and that this course was pursued with respect to the first four shipments in question, but that the defendant refused to accept the draft for the fifth shipment. At the time each shipment of butter was made to the defendant, plaintiff transmitted to the defendant a statement showing the quantity of butter and the purchase price and charges for transportation, when he paid the same, and defendant submitted to plaintiff accounts of sales on the usual form of accounts for sales made by commission merchants, giving the quantity and the price per pound and a computation based on that price, which the plaintiff claims to be the price at which the defendant sold the butter, and which the defendant claims to be not the actual selling price, but the price for which he was accountable to plaintiff, viz., five cents per pound above the current prices on the exchange. These statements also showed the cost price of the butter—taken from plaintiff's statements—including charges for transportation, and showed that defendant credited plaintiff with the cost of the butter and the cost of transportation, when paid by plaintiff, and one-half the difference between these two items and the total value of the butter at the price therein stated as aforesaid claimed by plaintiff to be the price at

which defendant sold, and by defendant to be the price for which he was accountable as aforesaid.

Defendant testified that the reason he used commission account blanks in reporting sales of the butter was that he had no other blanks, and that, inasmuch as his business was largely commission business, he used the same blanks with respect to all his business. He was permitted under objection and exception duly taken in behalf of the plaintiff to testify to the agreement between himself and Waldo to which the plaintiff was not a party, and of which plaintiff had no knowledge. That agreement was made eight or ten years prior to the time plaintiff bought out Waldo's business. He testified that it was, in substance, that he stated to Waldo that he needed "some fancy goods" for hotel customers who "were willing to pay five cents above the quotations of extras" which was the top quotation on the exchange for that line of butter, and that, if Waldo would furnish him "fancy butter," he would "pay him five cents above quotation for it less half of what I would make on it—what our profit was on it," that Waldo agreed "to ship me goods in that way," and that they did business that way for eight or ten years, and that, when Waldo introduced plaintiff to him, Waldo stated that he had sold his business out to plaintiff, "and wanted to know if he could continue doing business with me under those same conditions," and that he agreed to it provided the goods would be satisfactory, that he made out monthly statements to plaintiff, not according to the actual sales made by him, but at five cents above the current price of sales on the exchange, which accounts for the difference between the statements made by him and the actual selling price as shown by his books, and that these statements had no reference to the actual sales made by him and contained the statement of account of butter received, whether it had been sold or not, and regardless of loss on the sales, although he incurred many losses.

According to the testimony of the plaintiff, it is quite clear that he consigned the butter to the defendant to sell on a consignment basis, the commission being one-half the price received over and above the cost of the butter and transportation. If, however, the agreement was the same as the defendant had with Waldo, I am of opinion that the jury would be warranted in finding on his testimony that he became a purchaser of the butter, and that it was immaterial to the plaintiff at what price he sold it, for the plaintiff was only entitled to receive from him the cost of the butter to the plaintiff including transportation, when plaintiff paid the same, and one-half the difference between the price paid for the butter by the plaintiff and five cents per pound above the current price on the exchange. It is evident that the jury took that view of the case.

I am of opinion, however, that the court erred in receiving the evidence with respect to the agreement between the defendant and Waldo, and that the reception of this evidence was prejudicial to the plaintiff. The plaintiff was only bound by his own contract, and he could only become bound by the agreement between Waldo and defendant to the extent that the terms thereof were communicated to and accepted by

him, unless, which is not probable and is not sustained by his testimony, he saw fit to agree to be bound by the same arrangement without knowing what it was.

It follows, therefore, that the judgment and orders should be reversed, and a new trial granted, with costs to appellant to abide the event.

INGRAHAM, P. J. [1] I concur in the reversal of this judgment upon the ground that upon the undisputed evidence the defendant received the proceeds of the sale of this butter in a fiduciary capacity, and that the plaintiff was therefore entitled to the direction of a verdict. It was plainly not the intention of the parties that there should be a sale of the butter by the plaintiff to the defendant. He was to receive the butter and sell it at a price that was five cents a pound above the market price of butter of this quality; and it was undoubtedly a part of the agreement that he guaranteed a sale of the butter at a price specified. It was further agreed between the parties that the defendant's commission was to be one-half of the difference between the price at which the butter was invoiced and the price at which the butter was actually sold; but such an agreement was not at all inconsistent with the fact that the substantial transaction was the consignment of the butter by the plaintiff to the defendant to be sold on the plaintiff's account. It was so treated by the defendant in his accounts that he rendered to the plaintiff, and I think that was the legal effect of the arrangement between them. [2] I do not agree that the testimony as to the agreement between the defendant and Waldo, the plaintiff's predecessor in business, was incompetent, for, after Waldo had sold the business to the plaintiff, it was expressly agreed that the defendant would continue to receive butter from the plaintiff upon the same terms that he had been in the habit of receiving it before from Waldo. It was therefore competent to show the conditions under which Waldo and the defendant had done business.

I therefore concur in a reversal of the judgment.

CLARKE, SCOTT, and MILLER, JJ., concur.